IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

01 NOV -6  AM 10: 21

U S _____ COURT
N D OF ALABAMA

LATONYA ELLIS,                          )
                                        )
              Plaintiff,                )
                                        )
v.                                      )  CIVIL ACTION NO.: 00-PWG-1127-M
                                        )
GUNTERSVILLE HOTEL CORPORATION,         )
d/b/a GUNTERSVILLE HOLIDAY INN,[1]      )
                                        )
              Defendant.                )

**ENTERED**

**NOV - 6 2001**

## MEMORANDUM OF OPINION

This action is before the magistrate judge pursuant to the written consent of the parties to the exercise of jurisdiction by the magistrate judge. 28 U.S.C. § 636(c) and LR 73.2. The undersigned magistrate judge will address defendant's unopposed motion for summary judgment.

LaTonya Ellis, the plaintiff, was employed by the Guntersville Holiday Inn ("defendant") on May 24, 1997. She worked in housekeeping one day and then moved to the front desk. Rodney Ferrell was Ms. Ellis's immediate supervisor on the front desk until he left the employment of the defendant. Shane Moland was a friend of Ferrell but apparently not an employee of the motel. Ms. Ellis claims that Ferrell and Moland verbally sexually harassed. On February 20, 1998, plaintiff filed a charge with the Equal Employment Opportunity Commission. Prior to defendant receiving notice of the EEOC charge, Ferrell left the employment of the defendant in March 1998. Gaye Freeman then became Ms. Ellis's supervisor. In 1999, Ms. Freeman became General Manager of the motel. She promoted Ms. Ellis to Sales Director where Ms. Ellis remained until she was terminated on June 28, 2000. Plaintiff filed a second charge with the EEOC on June

---

[1]    The defendant was incorrectly named in the original complaint as King Management. In the motion for summary judgment, defendant advised that defendant's correct legal name is Guntersville Hotel Corp., d/b/a Guntersville Holiday Inn. (Defendant's motion for summary judgment, document #49, p.3).

1, 2001 alleging retaliatory discharge. In the original complaint filed in this court on April 28, 2000, Ms. Ellis alleged sex discrimination and sexually hostile work environment in violation of Title VII as a result of the alleged sexual harassment of Ferrell and Moland. She also alleged negligent supervision and retention.

On July 10, 2000, plaintiff amended her complaint to include a Title VII claim for retaliatory discharge and a state law claim for commissions due under the Alabama Commissions Sales Representative Act, Alabama Code, 1975, § 8-24-1, et. seq.   A second amended complaint was filed on September 29, 2000 alleging intentional racial discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981.[2/]   In addition to the federal lawsuit, Ms. Ellis filed a claim for employment benefits. After a hearing, the employer prevailed. Ms. Ellis then appealed to the Circuit Court of Marshall County, Alabama. A trial was conducted on June 6, 2001, wherein the court found that plaintiff was terminated for misconduct.

APPLICABLE LAW

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely

---

[2/]      Section 1981 claims and Title VII claims are evaluated under the same principles and framework. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1314 n.6 (11th Cir. 2000); *Ferrell v. Parker Group, Inc.*, 168 F.3d 1318, 1390 (11th Cir. 1998).

rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

Although defendant filed a motion for summary judgment accompanied by exhibits, plaintiff has not responded to the motion despite being informed of the consequence of her failure to comply with Rule 56.

I. Sex Discrimination or Sexual Harassment

Plaintiff alleges both *quid pro quo* sexual harassment and hostile work environment. In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751 (1998), the Supreme Court recognized that there are 2 different types of sexual harassment: (1) *Quid pro quo* sexual harassment which is "based on threats which are carried out" and (2) Hostile work environment which is based on "bothersome attentions or sexual remarks that are sufficiently severe or pervasive."

A.    *Quid pro quo* Sexual Harassment

The basis of the *quid pro quo* claim were comments by her supervisor that she would have to sleep with him to move up in the company, the failure of plaintiff to receive a raise every three months and the inconvenient changing of her work schedule to nights.  Although plaintiff alleged in her complaint that Ferrell told her she would have to sleep with him to move up in the company, she did not notify management of this fact. Ferrell resigned in March 1998. Clearly, after March 1998, there could have been no *quid pro quo* sexual harassment based on Ferrell's threat because Ferrell was no longer employed by defendant.  Moreover, Ms. Ellis was promoted to Sales Director in 1999.

The company policy on raises is that if an increase has been granted at the end of the ninety day probationary period, then the next annual review will be one year from the time of the increase.  Plaintiff received her first pay raise on September 1, 1997, upon the completion of her probationary period.  Thereafter, she received raises on May 31, 1998, March 28, 1999, June 27, 1999, and March 27, 2000.  It is also company policy to train employees at the front desk to work at night. Ms. Ellis acknowledged in her deposition that it was "probably not" discrimination to require her to work nights.

Company policy was followed with respect to pay and night work.  There is no evidence Ferrell actually carried out his threat to prevent her from "moving up" in the company.  Ms. Ellis has failed to show *quid pro quo* sexual harassment.

B.    Hostile Work Environment Sexual Harassment

"To establish a claim of "hostile work environment" sexual harassment, a plaintiff-employee must allege and eventually prove five elements: (1) that the employee belongs to a protected group; (2) that the employee was subjected to unwelcome harassment; (3) that the

4

harassment was based on the employee's sex; (4) that the harassment affected a "term, condition, or privilege" of employment; and (5) that the employer knew or should have known of the harassment and failed to intervene." *Succar v. Dade Co.*, 229 F.3d 1343, 1344-45 (11th Cir. 2000).

Plaintiff alleges that Ferrell would comment on her "butt" and breasts, that he stated that he wanted to have a "reverse oreo" with Ms. Ellis and Moland, that Moland said he wanted Ms. Ellis to move in with him and he wanted to "fuck [plaintiff] between [her] tits," that Ferrell informed Ms. Ellis "to get over it" when she complained about Moland's harassment, that Moland asked Ms. Ellis "what's wrong with anal sex" in Ferrell's presence and Ferrell laughed, that she received a note requesting sexual favors, that Moland grabbed Ms. Ellis's "behind," and that Ferrell stated that if Ms. Ellis wanted to move up in the company plaintiff would have to sleep with the boss.

In *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998), the Supreme Court held discussed an employer's liability for a hostile work environment and when an affirmative defense can be raised:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating

the first element of the defense. And while proof that
an employee failed to fulfill the corresponding
obligation of reasonable care to avoid harm is not
limited to showing any unreasonable failure to use
any complaint procedure provided by the employer,
a demonstration of such failure will normally suffice
to satisfy the employer's burden under the second
element of the defense. No affirmative defense is
available, however, when the supervisor's harassment
culminates in a tangible employment action, such as
discharge, demotion, or undesirable reassignment.

Although plaintiff has claimed a sexually hostile work environment, she has not

shown any tangible adverse employment action taken during Ferrell's supervision of her; therefore,

the defendant is entitled to raise the affirmative defense. It is undisputed that defendant had a

written policy against sexual harassment and a method for complaining of such as set forth in the

Employee Policies and Benefits Manual and that Ms. Ellis signed an acknowledgment that she had

received a copy of the manual. Defendant has met the first half of the affirmative defense

requirement.

Because it is undisputed Ms. Ellis did not use the complaint or grievance procedure

with respect to any of the incidents except the touching incident,[3/] the court concludes that the

defendant has met its burden of proving the affirmative defense except with respect to the touching

incident.

Ms. Ellis complained to Grace Falkner, the general manager, about Moland's

grabbing or touching her in June 1998. At the time of the touching incident, neither Ferrell nor

Moreland was an employee. The employer argues, *citing Breda v. Wolf Camera & Video*, 222 F.3d

886 (11th Cir. 2000), that it can be liable based on harassment by a non-employee only if it knew

---

[3/]    On February 20, 1998, Ms. Ellis filed an EEOC charge complaining of comments made by Ferrell and Moland;
however, an EEOC charge was not a method set forth in the manual for informing the employer of harassment.
Further, by filing an EEOC charge rather than using the procedure set forth in the manual, plaintiff deprived
the employer of an opportunity to remedy the situation.

or should have known of the harassment and failed to take remedial action. Although Ms. Ellis had filed an EEOC charge in February 1998 complaining of comments made by Ferrell and Moland, the EEOC charge did not include any allegations of improper touching. Further, after the filing of the EEOC charge, Ferrell left the employment of the employer in March 1998. Moland was apparently never employed by defendant. The court therefore cannot conclude that defendant knew or should have known that Moland would physically harass Ms. Ellis in June 1998. Further, after Ms. Ellis complained about the touching incident, no further incidents of touching were complained of leading to the conclusion that either the employer remedied the situation or no remedy was necessary. Defendant is entitled to summary judgment with respect to the sexually hostile work environment claim.

II.    Racially Hostile Work Environment

In the second amended complaint, plaintiff does not specifically indicate the conduct alleged to have been racially offensive. She refers back to the amended complaint of July 13, 2000 which set out her sexual harassment claim. Defendant, however, identified three comments which could conceivably provide a basis for plaintiff's racially hostile work environment claim. Ferrell used the terms "dirty white girl" and "reverse Oreo" prior to his departure in 1998. In 2000 Cindy Coltrain made the comment "I've not gotten anything done today, have you LaTonya? It's been like a nigger in the backyard working." Plaintiff has identified no conduct of defendant to support her racially hostile work environment claim.

The elements plaintiff must prove to prevail on her racially hostile work environment claim are: (1) that she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) that the harassment was based on race; (4) that the harassment was sufficient severe or pervasive so as to alter the conditions of her employment and create an abusive work

7

environment; and (5) that some basis for employer liability has been established. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986).

In determining whether an environment is hostile, the court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift System, Inc.*, 510 U.S. 17, 21 (1993). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." *Harris*, 510 U.S. at 21. In *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), the Supreme Court recognized that in considering the objective severity of the harassment, the court must consider all the circumstances, including the social context.

Although the comments involved were crude and offensive, the conduct was clearly isolated as evidenced by the fact that a period of more than two years separated the comments of Moland and Ferrell and Ms. Coltrain. Further, the comments were not physically threatening or humiliating but rather merely offensive. Most importantly, Ms. Ellis has not shown that this conduct actually altered her working conditions as to "make it more difficult to do the job." *Harris*, 510 U.S. at 21-25; *Watkins v. Bowden*, 105 F.3d 1344, 1355-56 (11th Cir. 1997).

Plaintiff has therefore failed to establish that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment.[3/]

---

[3/] The court further notes that it is unclear whether the defendant was even aware of Ferrell's alleged comments. When the general manager heard Ms. Coltrain make her comment, she gave Ms. Coltrain an employee correction report in which Ms. Coltrain was warned that she could be dismissed for any further action. Granted, the delay in issuing the comment may have been excessive in light of the fact that the comment was made April 20, 2000 but the report was not issued until May 19, 2000.

III.    Racial Discrimination

   In the second amended complaint, it appears that plaintiff alleges that she was terminated because of her race; however, she has not directed the court to any evidence to support her claim.    Because there is no direct evidence of race discrimination the McDonnell Douglass/Burdine framework is the applicable analysis. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1977), *cert. denied,* 522 U.S. 1045 (1998).  The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To establish a *prima facie* case of disparate treatment plaintiff must show that (1) she is a member of a protected class, (2) was similarly situated with a person outside of the protected class, but (3) was denied a condition of employment afforded that person. *Thompkins v. Morris Brown College*, 725 F.2d 558, 562 n.7 (11th Cir. 1985), *citing McDonnell Douglas Corp.*, 411 U.S. at 802-03, n.13.  If a plaintiff establishes a *prima facie* case, the burden the shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 257-58 (1981).  Once this burden is met, plaintiff must demonstrate by a preponderance of the evidence that defendant's reason is pretextual.  Even if the court assumed that plaintiff had established a *prima facie* case of race discrimination, plaintiff would still not be entitled to relief because, as stated in the retaliation discussion below, defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff and plaintiff has failed to show that the reason articulated was pretextual.

IV.    Retaliatory Discharge

   To establish a *prima facie* case of retaliation plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relationship between the two events. *Taylor v. Runyon*, 175 F.3d 861, 868 (11th

Cir. 1999). To satisfy the causal relationship requirement plaintiff need only show "that the protected activity and the adverse action are not completely unrelated." *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994) (*quoting EEOC v. Richhold Chem., Inc.*, 988 F.2d at 1571-72 (11th Cir. 1993)).

On February 20, 1998 plaintiff filed an EEOC complaint which is protected under Section 704(a). *Rollins v. State of Florida Department of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). On April 28, 2000 plaintiff filed a lawsuit in this court based on the allegations raised in her EEOC charge. Plaintiff clearly suffered an adverse employment action when she was terminated from her job on June 28, 2001. Plaintiff has not met the "causal link" requirement of a *prima facie* case by presenting evidence that either her EEOC charge or her lawsuit "had some bearing on" the decision to terminate her employment. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189-90 (11th Cir. 1997) (A review of cases where employer's actions constituted direct evidence of a discriminatory or retaliatory attitude).

Defendant correctly argues that it is unlikely that either the 1998 EEOC charge or the 2000 lawsuit would have motivated Freeman to terminate plaintiff's employment:

> ... The only E.E.O.C. charge filed before the plaintiff was terminated was filed in February, 1998 (Ellis deposition, Exhibit Eight). Due to the length of time between the charge and the lawsuit being filed in April 2000, it is unlikely that the old alleged incidents in 1998 contributed to the decision to terminate. See *Breech v. Al. Power Co..*, 962 F. Supp. 1447, 1461 (S.D. al. 1997), *aff'd*, 140 F.3d 1043 (11th Cir.), *cert. denied*, 525 U.S. 846, 119 S.Ct. 117, 142 L.Ed.2d 94 (1998).
>
> The Complaint filed in April, 2000, only alleged claims of sexual harassment. The racial slur alleged in 2000 was the only incident that occurred while Gaye Freeman was General Manager. It is unlikely

> that Freeman would take an adverse action based on
> an old incidents [sic] of sexual harassment in 1997
> and 1998, especially since those incidents did not
> concern her and she was not the manager or
> supervisor at the time.

(Defendant's Memorandum, p. 13.)

Nevertheless, even assuming that plaintiff had made a *prima facie* case of retaliation,

defendant has proffered a legitimate, non-retaliatory reason for the termination. *EEOC v. Reichhold*

*Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993).   Defendant has submitted the affidavit

of Gaye Freeman to explain the reason for plaintiff's termination:

> I made the decision to promote Ellis to Sales Director.
> I later made the decision to terminate Ellis because of
> insubordination and job performance.      The
> insubordination consisted of several incidents of Ellis
> being rude to me usually in front of other people,
> refusing to follow my directions, and refusing to
> speak to coworkers enough to perform her job duties.
> Ellis was written up several times before she was
> terminated.  In addition to the insubordination, Ellis
> suddenly quit performing her job duties adequately
> and made mistakes costing the company several
> thousands of dollars.
>
> It was part of Ellis's job to make reservations for
> groups.  If the groups later canceled Ellis was to
> release the rooms in a timely manner so others would
> be able to rent the rooms.  On more than one occasion
> Ellis failed to notify the front desk of cancellations
> thereby resulting in the lost revenue.

(Defendant's Exhibit 3).

Defendant, therefore, carried its burden of proffering a legitimate, non-retaliatory

reason for terminating plaintiff's employment by stating that she was terminated for insubordination

and job performance.  Plaintiff has failed to show that defendant's reason for terminating plaintiff

was pretextual.  Defendant is entitled to summary judgment on this claim.

11

V.      Claim for commissions

Although Ms. Ellis alleged in her amended complaint that she was not paid the commissions she earned in violation of the Alabama Commissions Sales Representative Act, Alabama Code, 1975, § 8-24-1, et seq., she has not disputed that she was mailed a check on July 5, 2000 for all commissions earned before her termination date and that she kept the check and made no complaint about the amount. Because Ms. Ellis was apparently paid all the commissions she was due, defendant is entitled to summary judgement on this claim.

VI.     Negligent supervision and/or Retention

In the complaint and amended complaint filed July 13, 2001, plaintiff identified one of her causes of action to be for negligent supervision and/or retention. In support of this count, plaintiff alleged " On or about June 1998, Moland entered the defendant's facility and grabbed Ellis' butt. Defendant was aware of plaintiffs's prior EEOC charge and did not take any steps to prevent Moland's sexual groups. It is unclear whether the negligent supervision and/or retention count was intended to be a federal or state law claim. Under either analysis, the claim must fail because Moland was not an employee of defendant. An employer can be held liable under Title VII and § 1981 for a supervisor's harassment when the employer negligently permitted the tortious conduct to occur. *Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417, 421 (11th Cir. 1999). Because Moland was not a supervisor, defendant would not be liable under Title VII and § 1981. Under Alabama law, defendant would be liable for negligent supervision only if Moland was an employee. *See, Armstrong Business Services, Inc. v. AmSouth Bank*, ____ So. 2d ___, 2001 W.L. 996066, *16 (Ala. August 31, 2001). Further, even if plaintiff could state a claim for negligence based on the actions of a non employee, there is nothing in the record that should have alerted defendant that Moland might grope plaintiff. The EEOC charge was filed in February 1998. The

touching by Moland occurred in June 1998 after Ferrell resigned in March 1998.  Moland was a friend of Ferrell's.  Not only did the EEOC charge not alert defendant to the potential for an unconsented touching, but the defendant also had no reason to think that Moland would be present at the inn after the resignation of his friend, Ferrell.  Summary judgment is appropriate because plaintiff has failed to show that defendant knew or should have known of the harassment potential and taken preventive action.

Based on the foregoing the defendant's Motion for Summary Judgment is due to be granted.  A separate Final Judgment consistent with this Memorandum of Opinion will entered simultaneously herewith.

DONE this the _6th_ day of November, 2001.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

13